WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Connolly,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-16-01011-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's appeal of Defendant's denial of her application for social security disability benefits. More specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in not fully crediting the opinions of three of Plaintiff's treating physicians.

**I.  Legal Standard**

    **A.  Review of ALJ's Decision**

The decision of Administrative Law Judge ("ALJ") to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether

there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

### B. Medical Testomony

With respect to medical testimony specifically, the Ninth Circuit Court of Appeals distinguishes between the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). As a general rule, the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician, but less than a treating physician. *Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995).

An "ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).

> Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). However, the ALJ can reject the opinion of a treating physician in favor of the conflicting opinion of another examining physician "if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Id*. at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

*Connert v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

An "ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Further, "incongruity between [a doctor's opinion] and [his] medical records" is a "specific and legitimate reason for rejecting" the doctor's opinion. *Tommasetti*, 533 F.3d at 1041.

When reviewing an ALJ's determination, the Court must uphold an ALJ's decision—even if the ALJ could have been more specific in the opinion—if the Court can reasonably infer if and why the ALJ rejected an opinion. *Magallanes*, 881 F.2d at 755; *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal quotations omitted). Moreover, "if evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision" *Batson*, 359 F.3d at 1193; *see also Osenbrock v. Apel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

## II. Treating Physicians

Plaintiff argues on appeal that the ALJ failed to give adequate reasons for discrediting the testimony of three of her doctors: Dr. Ong-Veloso; Dr. Premaratne; and Dr. Ramadan.

### A. Dr. Ong-Veloso

On this record, it appears that only Dr. Ong-Veloso's physician's assistant examined Plaintiff and completed an assessment of Plaintiff. (Doc. 10-11 at 125-137). Included in the records submitted by the physician's assistant are two documents titled "medical assessment of ability to do work related activities." One is dated October 29, 2012. (Doc. 10-11 at 135-137). The other is dated August 7, 2013. (Doc. 10-11 at 132-133).

The ALJ gave little weight to these assessments because they were not from an acceptable medical source. (Doc. 10-3 at 23). The ALJ "may discount testimony from [non-acceptable medical sources] if the ALJ gives reasons germane to each witness for

doing so." *Molina*, 674 F.3d at 1111 (internal quotation marks omitted) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)); *see also* 20 C.F.R. § 404.1512; 20 C.F.R. § 404.1527 (a)(2).

Plaintiff does not dispute that the ALJ can discredit a non-acceptable medical source if the ALJ gives germane reasons. In this case the ALJ gave two reasons: 1) the assessment is not supported by objective evidence; and 2) it is inconsistent with the record as a whole. (Doc. 10-3 at 23). Instead, Plaintiff argues the ALJ erred in treating this as a non-acceptable medical source because the latter report was "cosigned" by Dr. Ong-Veloso, which Plaintiff argues transmutes the report into Dr. Ong-Veloso's opinion.

With regard to the first, October 29, 2012, report, it is undisputedly from a non-acceptable medical source, and the ALJ gave adequate reasons for not fully crediting it. With regard to the second, August 7, 2013, report, the physician's assistant handwrote at the bottom, "Cosign- Dr. Ong Veloso, MD supervising phys." followed by a blank line with a "J" signed on it. (Doc. 10-11 at 133). For purposes of this Order, the Court will assume the "J" is the signature of Dr. Ong-Veloso.

As indicated above, Plaintiff argues that this "cosigning" converts the physician's assistant's examination and opinion into the examination and opinion of Dr. Ong-Veloso, who is a treating physician. (Doc. 13 at 6). Plaintiff cites nothing for this argument. However, a district court in California has addressed Plaintiff's theory. That district court explained:

> Physician's assistants, nurse practitioners, and chiropractors (among others) are medical professionals, but they are not "acceptable medical sources" under the Social Security regulatory framework. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The evaluations of a claimant by these medical professionals are considered evidence from "other sources." *Id.* The distinction between "other sources" and an "acceptable medical source" is important because only an "acceptable medical source" may be considered a "treating source." See 20 C.F.R. §§ 404.1502, 416.90. …
> … in the Social Security context, courts are more frequently confronted with disputes as to how evaluations by other medical professionals should be weighed, whether these professionals could be considered "acceptable medical sources" under certain circumstances, and, if so, whether their opinions may be assigned "treating-source" status. As a general rule, medical evaluations of a claimant that are created and signed

by medical professionals who are not considered "acceptable medical sources" under SSA regulations will not be ascribed "treating-source" status.

The United States Court of Appeals for the Ninth Circuit has carved out an important exception to this general rule in *Gomez v. Chater*, 74 F.3d 967 (9th Cir.1996). In *Gomez*, the court held that the opinion of an NP was properly ascribed to the supervising physician and treated as an opinion from an "acceptable medical source" because the record indicated that the NP worked so closely under the supervision of the physician that she became the agent of the physician. *Id.* at 971. While the court did not provide particular examples of the type of evidence that established this agency relationship, it did indicate that the NP consulted with the physician regarding the claimant's treatment on numerous occasions. *Id*. The court also reasoned that, pursuant to 20 C.F.R. § 416.913(a)(6), "[a] report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence." *Id*. The court concluded that a plain reading of paragraph (a)(6) in conjunction with the definition of "other source" evidence "indicates that a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not." *Id.*

Since *Gomez*, district courts have interpreted this exception narrowly. *See, e.g., Ramirez v. Astrue*, No. ED CV 09–1371–PJW, 2011 WL 1155682, at *4 (C.D. Cal. Mar. 29, 2011) (physician's co-signature on client-plan prepared by a social worker did not indicate that the social worker was under close supervision of the physician in treating or in preparing the reports, thus social worker's evaluation was not from an "acceptable medical source"); *Vasquez v. Astrue*, No. CV–08–078–CI, 2009 WL 939339, at *6 n. 3 (E.D. Wash. Apr.3, 2009) (PA's report "signed off" by a superior believed to be a doctor did not constitute "acceptable medical source" opinion); *Nichols v. Comm'r of Soc. Sec. Admin.*, 260 F.Supp.2d 1057, 1066–67 (D. Kan.2003) (distinguishing *Gomez* where physician signed the report of an NP but no evidence indicated that NP consulted with the physician during the course of the patient's treatment and concluding opinion was not from an acceptable medical source).

In application, *Gomez* does not stand for the proposition that any medical professional, who would not otherwise be considered an "acceptable medical source," is transformed into an "acceptable medical source" merely because he or she is supervised to any degree by a physician. As a result, evaluations of a claimant prepared by medical professionals other than the physician, even where the evaluation is reviewed and signed by a supervising physician, will not typically be treated as evidence from "an acceptable medical source." *See, e.g., Ramirez, Vasquez, and Nichols, supra.* Rather, there must be evidence of such close supervision that the "other source" becomes the agent of the "acceptable medical source."

*Garcia v. Astrue*, No. 1:10-CV-00542-SKO, 2011 WL 3875483, at *12–13 (E.D. Cal. Sept. 1, 2011).

On this record, the Court cannot determine how much interaction the

- 5 -

"supervising" doctor had with Plaintiff. Every document in exhibit 18F, as cited by the ALJ, is signed exclusively by the physician's assistant, with the one additional supervisor signature on the August 7, 2013 form. Plaintiff has pointed to no evidence that Dr. Ong-Veloso did anything other than co-sign this form. As the district court in *Garcia* indicated, mere supervision is not enough to transform a non-acceptable medical source into a treating physician. Accordingly, the Court finds that the ALJ did not err in treating the August 7, 2013 report as being from a non-acceptable medical source. Additionally, the Court finds the ALJ gave germane reasons for rejecting this assessment.

Alternatively, even if the August 7, 2013, assessment could be converted by the co-signing to the opinion of a treating physician, the ALJ articulated why he did not fully credit the opinion. Preliminarily, the Court must determine whether the clear and convincing standard or the specific and legitimate standard governs the reasons the ALJ must give to not fully credit this opinion.

Plaintiff makes an ambiguous argument about whether she thinks the "clear and convincing" standard applies or the "specific and legitimate" standard. First she argues that a non-examining physician's opinion, which is not corroborated by an examining physician, cannot be substantial evidence to support the ALJ's decision. (Doc. 13 at 8). Plaintiff cites no legal authority for this legal conclusion. Presumably because Plaintiff has completely disregarded the non-examining physician's opinions for the reason stated above, Plaintiff then says that Plaintiff's treating physician opinions regarding her physical limitations are not contradicted in this case. (Doc. 13 at 8). Plaintiff never reaches a conclusion to these arguments. However, the Court will assume that Plaintiff is advocating for the clear and convincing standard, which is applicable if the treating physician's opinions are not contradicted. (*See generally* Doc. 13 at 8).

The Court finds the specific and legitimate standard applies in this case because the opinions of the treating physicians regarding Plaintiff's physical limitations are contradicted in this record. Specifically, the Court rejects Plaintiff's unsupported argument that a non-examining physician's opinion must be completely disregarded as

- 6 -

evidence of record.[1]  Further, the ALJ expressly stated that, "I have considered and give great weight to physical State agency review physicians who opined light limitations." (Doc. 10-3 at 23).  The ALJ then cited to the reports of Dr. Myron Watkins, M.D. and K. Glass, medical consultant.  (Doc. 10-3 at 23).  The ALJ then detailed the qualifications of these doctors and the breadth of the documents they reviewed.  (Doc. 10-3 at 23-24).

The ALJ gave additional specific and legitimate reasons, supported by substantial evidence, to reject the opinion of the physician's assistant (as co-signed by Dr. Ong-Veloso).  Specifically, the ALJ noted that the opinions/limitations were inconsistent with the record as a whole (Doc. 10-3 at 23) including the global assessment of functioning score (Doc. 10-3 at 24).  The ALJ also found the limitations were inconsistent with the claimant's testimony regarding her daily activities.  (Doc. 10-3 at 23).  Further, the ALJ found that the opinions were not supported by objective evidence.  (Doc. 10-3 at 23). Because the ALJ gave specific and legitimate reasons to not fully credit the assessment co-signed by Dr. Ong-Veloso, even assuming this assessment should be considered as one by a treating physician, the ALJ did not commit error.

### B.     Dr. Premaratne

Next Plaintiff argues that the ALJ erred for only giving little weight to the opinion

---

[1] The Ninth Circuit Court of Appeals has held that "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).  However, in that same opinion, the Court stated, "We have, in some cases, upheld the Commissioner's decision to reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor." *Id.*  Specifically, the Court of Appeals has stated, "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Based on the foregoing, the Court finds two flaws in Plaintiff's argument.  First, nothing in *Lester* purports to hold that a non-examining medical source is never a contradicting medical opinion that would necessitate the use of the clear and convincing standard rather than the specific and legitimate standard.  Second, Plaintiff overstates the holding of *Lester*.  While the Court does state that the opinion of a non-examining physician cannot be the *only* substantial evidence of record, the Court of Appeals clearly states that the opinion of the non-examining physician is nonetheless evidence on which the ALJ can rely in reaching a decision.  Thus, this Court rejects Plaintiff's argument that the opinions of the non-examining physicians cannot be considered as conflicting medical opinions.

of rheumatologist Dr. Premaratne. (Doc. 13 at 6). Plaintiff argues that the ALJ committed error because "there is no evidence in the record to support the assumption that … Dr. Premaratne relied only on [Plaintiff's] complaints to complete the assessment." (Doc. 13 at 9). Plaintiff further argues that the ALJ committed error because the ALJ found that Dr. Premaratne's opinions/limitations were inconsistent with the objective findings; and Plaintiff argues that looking to objective findings is error with a fibromyalgia diagnosis because it is a disease that "eludes such measurement." (Doc. 13 at 11-12 (quoting *Green-Young v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)).

First, the Court notes that the *Green-Young* court found error for an ALJ to require objective findings to confirm a fibromyalgia diagnosis. 335 F.3d at 108. In this case, the ALJ found that the limitations found by Dr. Premaratne were inconsistent with the objective findings of record, which is not the equivalent of requiring objective findings to support a diagnosis. (Doc. 10-3 at 23) (The ALJ found that Dr. Premaratne's opinion, "is inconsistent with the objective findings already discussed above in this decision, which show mild to moderate [limitations]".).

The ALJ's conclusion in this regard is a specific and legitimate reason and is supported by substantial evidence of record. Specifically, the ALJ referenced the opinion of Dr. Glassmire (Doc. 10-3 at 22-23) finding only mild to moderate symptoms. The ALJ also referenced the findings of examining physician Dr. Doss which found almost no limitations. (Doc. 10-3 at 22). These objective findings taken together are substantial evidence of record to support the ALJ's decision.

Second, the Court is a bit confused as to how Plaintiff can argue both that Dr. Premaratne's diagnosis cannot be supported by objective findings, *and* that it was not based on Plaintiff's self-reported symptoms. In other words, if Plaintiff is correct that Dr. Premaratne did not rely only on Plaintiff's self-reported symptoms and Dr. Premaratne did not rely on any objective findings or tests (because there are none), what method is Plaintiff claiming Dr. Premaratne employed to determine Plaintiff's limitations? Given that Plaintiff spent three pages of her brief explaining that fibromyalgia cannot be

supported by objective findings, the Court finds Plaintiff has waived any argument that the ALJ erred in concluding that Dr. Premaratne based his opinion/limitations on Plaintiff's self-reported symptoms.

In this regard, the ALJ gave little weight to Dr. Premaratne's opinions/limitations because those opinions were based on Plaintiff's subjective complaints, and the ALJ found that Plaintiff's subjective complaints were so inconsistent with her reported daily activities and medical history that Plaintiff's self-reported symptoms were not credible. (Doc. 10-3 at 23; 19-20). Specifically, Plaintiff's robust daily activities include:

1. getting her daughters ready for school;
2. getting her daughters off to school;
3. interacting with her daughters regularly;
4. doing some chores;
5. talking with her girlfriend;
6. showering;
7. grocery shopping;
8. working up to 20 hours per week;
9. getting her daughters ready for camp;
10. driving her daughters to school;
11. driving her daughters to camp;
12. doing laundry;
13. cleaning the house;
14. meeting her daughters for lunch at school;
15. going to the food bank;
16. preparing meals;
17. going to church;
18. caring for her dog;
19. watching movies;
20. doing her hair;

|   |   |   |
|---|---|---|
| 1 | 21. | putting on makeup; |
| 2 | 22. | going out daily; |
| 3 | 23. | driving regularly; |
| 4 | 24. | going out alone; |
| 5 | 25. | handling her finances; |
| 6 | 26. | having an active social life and spending time with other people; |
| 7 | 27. | talking on the phone; and |
| 8 | 28. | having guests over to her house. |

(Doc. 10-3 at 19-20). With respect to Plaintiff's medical history, Plaintiff:

1. self-reported significant fatigue at the hearing, but did not report fatigue to her doctors; further she denied fatigue to her doctors.

2. received only non-emergency treatment;

3. received only conservative treatment; and

4. received only routine treatment.

(Doc. 10-3 at 20).

Against this record of Plaintiff's history, the ALJ giving little weight to the opinions and limitations arrived at by Dr. Premaratne based on Plaintiff's self-reported symptoms is an additional specific and legitimate reason supported by substantial evidence of record to not credit Dr. Premaratne's opinion. Accordingly, the ALJ did not err in not fully crediting Dr. Premaratne's opinion.

**C.  Dr. Ramadan**

Plaintiff claims the ALJ also erred in not fully crediting the opinion of her treating psychologist, Dr. Ramadan. (Doc. 13 at 6). Although there is an examining physician's opinion relied on by the ALJ (Dr. Doss (Doc. 10-3 at 22, 24)), Plaintiff argues that the clear and convincing standard applies because Dr. Doss's opinion does not contradict Dr. Ramadan's opinion. (Doc. 13 at 10). Further, although there is a non-examining physician's opinion relied on by the ALJ (Dr. Glassmire (Doc. 10-3 at 22-24)), Plaintiff argues such opinion cannot be considered as substantial evidence that would support the

specific and legitimate reasons standard; therefore, the clear and convincing standard would apply.

For the reasons discussed above (*see* footnote 1 *supra*), the Court rejects the latter argument. Further, the Court finds that examining physician Doss's opinion contradicts Dr. Ramadan's opinion such that the specific and legitimate reasons supported by substantial evidence test governs the ALJ's failure to fully credit Dr. Ramadan's opinion in this case.

Specifically, the ALJ cited to Dr. Ramadan's residual functional capacity check-box form (Doc. 10-3 at 23 citing Exhibit 20F (Doc. 10-12 at 33-34 in this Court's file)) and rejected it because it was based on Plaintiff's subjective complaints and not on objective findings or diagnostic reasons to support the Doctor's functional assessment. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[An] ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (internal punctuation and citations omitted). And, as indicated above, the Plaintiff's subjective complaints lacked credibility due to the inconsistency between her complaints and her activities. (Doc. 10-3 at 23). Thus, the ALJ rejected Dr. Ramadan's conclusions because they were inconsistent with Plaintiff's testimony regarding the breadth and complexity of her daily activities.

The foregoing are all specific and legitimate reasons supported by substantial evidence of record for the ALJ to not credit the opinions and limitations found by Dr. Ramadan. Therefore, the ALJ did not commit error as to this doctor.

### D. Fibromyalgia

As alluded to above, Plaintiff spends the last 3 pages of her brief arguing that the ALJ erred in his treatment of fibromyalgia. (Doc. 13 at 11-13.). For the reasons stated above, the Court finds that the ALJ gave specific and legitimate reasons supported by substantial evidence of record to not fully credit the opinions and limitations of each of Plaintiff's treating physicians, including the one (Dr. Premaratne) who diagnosed her with fibromyalgia. Therefore, the Court finds no global error regarding this particular

diagnosis.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that the decision of the ALJ is affirmed and the Clerk of the Court shall enter judgment accordingly.[2]

Dated this 8th day of May, 2017.

James A. Teilborg
Senior United States District Judge

---

[2] To the extent a mandate is required, the judgment shall serve as the mandate.